# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

ESTATE OF SEYMOUR KRINSKY,
By Its Personal Representative, Sharon Brown,

      Plaintiff,

        v.

THE GIII ACCUMULATION TRUST,
SEYMOUR KRINSKY INSURANCE TRUST,
and MLF LEXSERV LP,

      Defendants.

Case No. 22-cv-80059-SINGHAL

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT MLF LEXSERV LP'S MOTION TO DISMISS

## TABLE OF CONTENTS

Page

INTRODUCTION AND BACKGROUND ................................................................................. 1

ARGUMENT ........................................................................................................................... 6

I.  This Court Has Personal Jurisdiction Over LexServ ..................................................... 6

  A.  There is specific jurisdiction under Florida's long-arm statute ................................ 6

   1.  Specific jurisdiction exists under the long-arm statute because LexServ engaged in business in Florida. ................................................................................. 6

  B.  There is specific jurisdiction under the Due Process Clause ................................. 9

   1.  LexServ has satisfied the purposeful-availment / minimum-contacts prong. ............... 10

   2.  The Estate's claim arises out of or relates to LexServ's contacts with the forum. ....... 10

   3.  Exercising jurisdiction would not offend traditional notions of fair play and substantial justice. .............................................................................................. 12

  C.  In the alternative, this Court should permit the Estate to supplement its opposition with facts obtained through jurisdictional discovery ................................................ 13

II.  The Estate has stated a claim against LexServ under Delaware law by alleging that LexServ or its principal received the unlawful death-benefit proceeds ................................................ 14

  A.  Delaware law applies .......................................................................................... 14

  B.  The Estate has stated a claim against LexServ ...................................................... 16

  CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
    774 F.3d 979 (Fed. Cir. 2014) ...................................................................18

*Accurate Insurance Group, Corp. v. Accurate Insurance Services, Inc.*,
    14-cv-22381, 2015 WL 11233072 (S.D. Fla. Mar. 2, 2015) ...................8

*Am. Greetings Corp. v. Cohn*,
    839 F.2d 1164 (6th Cir.1988) .....................................................................12

*Aviation One of Fla., Inc. v. Airborne Ins. Consultants*,
    722 F. App'x 870 (11th Cir. 2018) .........................................................9, 13

*Belik v. Carlson Travel Grp., Inc.*,
    864 F. Supp. 2d 1302 (S.D. Fla. 2011) ......................................................18

*Bilal v. Geo Care, LLC*,
    981 F.3d 903 (11th Cir. 2020) ....................................................................16

*Canale v. Rubin*,
    20 So. 3d 463 (Fla. Dist. Ct. App. 2009) ...................................................8

*Estate of Diamond v. ITM, et al.*,
    21-cv-80339, Dkt. No. 57 (S.D. Fla. June 17, 2021) .............................5, 17

*Execu-Tech Business Systems, Inc. v. New Oji Paper Co. Ltd.*,
    752 So. 2d 582 (Fla. 2000)............................................................................6

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
    218 F.3d 1247 (11th Cir.2000) .....................................................................7

*Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*,
    791 So. 2d 4 (Fla. Dist. Ct. App. 2000) ..................................................6, 9

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,
    421 F.3d 1162 (11th Cir. 2005) ...................................................................8

*Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*,
    723 F.Supp.2d 676 (D. Del. 2010)..............................................................18

*Lavastone Capital LLC v. Estate of Berland*,
    —A.3d—, No. 75-2021, 2021 WL 5316071 (Del. Nov. 16, 2021)...........2

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ...................................................................10, 12

*Madara v. Hall*,
   916 F.2d 1510 (11th Cir. 1990) ...........................................................................17

*Estate of Malkin v. Wells Fargo Bank, N.A.*,
   379 F. Supp. 3d 1263 (S.D. Fla. 2019) ...................................................... *passim*

*Estate of Malkin v. Wells Fargo Bank, N.A.*,
   998 F.3d 1186 (11th Cir. 2021) ...........................................................................15

*Posner v. Essex Ins. Co.*,
   178 F.3d 1209 (11th Cir. 1999) .......................................................................6, 12

*Ranger Nationwide, Inc. v. Cook*,
   519 So.2d 1087 (Fla. 3d DCA 1988) .....................................................................7

*RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*,
   579 Fed. App'x 779 (11th Cir. 2014) .....................................................................8

*S.E.C. v. Pacific West Capital Grp., Inc., et al.*,
   2:15-cv-02563, Dkt. No. 153 (C.D. Cal. May 2, 2018) .........................................18

*Schwab v. Hites*,
   896 F.Supp.2d 1124 (M.D. Fla. 2012) ...................................................................8

*Stonepeak Partners, LP v. Tall Tower Capital, LLC*
   231 So. 3d 548 (Fla. 2d DCA 2017) ......................................................................8

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
   447 F.3d 1357 (11th Cir. 2006) ...........................................................................13

*Sun Life Assur. Co. of Canada v. U.S. Nat'l Bank Assoc.*,
   369 F. Supp. 3d 601 (D. Del. 2019) .....................................................................15

*Sun Life Assur. Co. of Canada v. Wells Fargo Bank, N.A.*,
   208 A.3d 839 (N.J. 2019) .......................................................................................2

*Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*,
   No. 14-CIV-62610-BLOOM/VALLE, 2016 WL 161598 (S.D. Fla. Jan. 14,
   2016), *aff'd in relevant part*, 693 F. App'x 838 (11th Cir. 2017) ......................4, 15

*T.V. Spano Bldg. Corp. v. Wilson*,
   584 A.2d 523 (Del. Super. 1990) .........................................................................19

*Trepko, Inc. v. Golden W. Trading, Inc.*,
   20-cv-464-CEH-JSS, 2021 WL 424347 (M.D. Fla. Feb. 8, 2021) ...........................8

*U.S. Bank Nat'l Ass'n v. Sun Life Assur. Co. of Canada*,
   No. CV144703SJFARL, 2016 WL 8116141 (E.D.N.Y. Aug. 30, 2016) ................................15

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) .....................................................................................18

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) .....................................................................................10

*Walden v. Fiore*,
   571 U.S. 277 (2014)..........................................................................................................9

**Statutes**

18 *Del. C.* 2704(b) .........................................................................................................2, 11, 16

18 *Del. C.* § 2701(2) ............................................................................................................15

18 Del. C. § 2704(b) .........................................................................................................2, 12

18 *Del. C.* § 2704(g) ............................................................................................................15

Alaska Stat. Ann. §21.42.020(b)............................................................................................2

Ariz. Rev. Stat. Ann. §20-1104(B) ........................................................................................2

Ark. Code Ann. § 23-79-103(b)..............................................................................................2

Colo. Rev. Stat. § 10-7-709 ....................................................................................................2

F.S.A. § 48.193(1)...................................................................................................................7

Fla Stat. Ann. § 627.404 .......................................................................................................13

Fla Stat. Ann. § 627.404(1) & (4) ..........................................................................................2

Fla. Stat. Ann. § 627.404(4)....................................................................................................2

Haw. Rev. Stat. § 431:10-204(c) ............................................................................................2

Idaho Code Ann. § 41-1804(2) ...............................................................................................2

Kan. Stat. Ann. § 40-450(c) ....................................................................................................2

Ky. Rev. Stat. Ann. § 304.14-040(3) ......................................................................................2

La. Stat. Ann. § 22:901(B)......................................................................................................2

Md. Code Ann. Ins. § 12-201(d).............................................................................................2

Me. Rev. Stat. tit. 24-A, § 2404(2) .................................................................................2

Minn. Stat. Ann. §60A.0789(1)(a) .................................................................................2

Miss. Code Ann. § 83-5-251(2) .................................................................................2

Mont. Code Ann. § 33-15-201(2) .................................................................................2

N.D. Cent. Code § 26.1-29-09.1(2) .................................................................................2

N.J. Stat. Ann. § 17B:24-1.1(c) .................................................................................2

N.M. Stat. Ann. § 59A-18-4(B) .................................................................................2

N.Y. Ins. Law § 3205(b)(4) .................................................................................2

Nev. Rev. Stat. § 687B.040(3) .................................................................................2

Okla. Stat. Ann. tit. 36, § 3604 .................................................................................2

Or. Rev. Stat. § 743.040(2) .................................................................................2

R.I. Gen. Laws § 27-4-27(b) .................................................................................2

S.D. Codified Laws § 58-10-5 .................................................................................3

W. Va. Code § 33-6-2(b) .................................................................................3

Wash. Rev. Code § 48.18.030(2) .................................................................................3

Wyo. Stat. Ann. § 26-15-102(b) .................................................................................3

**Other Authorities**

Aging, *Betting on Death in the Life Settlement Market: What's at Stake for Seniors*, No. 111-4 (Apr. 29, 2009) .................................................................................3

Fourteenth Amendment .................................................................................6, 9

RESTAT. 2D AGENCY § 343 .................................................................................19

RESTAT. 3D AGENCY § 6.09 .................................................................................19

RESTAT. 3D AGENCY § 7.01 .................................................................................5, 19

Rule 12(b)(2) .................................................................................13

Rule 12(b)(6) .................................................................................16, 18

Susan Lorde Martin, *Betting on the Lives of Strangers: Life Settlements, STOLI, and Securitization* ...............................................................................................................3

U. Pa. J. Bus. L. 173, 198–99 (2010)...............................................................................................3

Plaintiff, the Estate of Seymour Krinsky, by Its Personal Representative, Sharon Brown (the "Estate"), submits this brief in opposition to the motion to dismiss (D.E. 31) filed by Defendant MLF LexServ LP (n/k/a LexServ LP) ("LexServ").

## INTRODUCTION AND BACKGROUND

This action arises from the payment of a seven-figure death benefit under a Delaware life insurance policy—which was subject to Delaware law—insuring the life of an elderly Florida resident, Seymour Krinsky (the "Policy"). Despite having been disguised to appear to be supported by a legitimate insurable interest at inception, the Policy was, in fact, procured by unrelated investors as a wager on Mr. Krinsky's life through a stranger-originated life insurance ("STOLI") scheme. From the outset, the Policy was controlled by and for the benefit of investors—not for Mr. Krinsky, his family, or anyone else with an insurable interest in his life.

As part of the STOLI scheme, either the initial investors or the Policy's subsequent owners hired LexServ to act as servicer of the Policy. This role included reaching into Florida to make and maintain regular contact with Mr. Krinsky and his daughter so that LexServ could monitor Mr. Krinsky's declining health and more accurately assess how much longer he might live. As LexServ admits—or as the Complaint otherwise alleges without contradiction by LexServ—LexServ's role as "servicer" of the Policy involved communicating "with Krinsky" or his "designated representatives" in Florida; obtaining medical record authorizations in Florida so as to monitor Mr. Krinsky's health in Florida; identifying when Mr. Krinsky passed away in Florida; and, following his death in June 2020, issuing a "request for a death certificate" to the Florida Department of Health. (MTD at 3; Decl. of M. Coniglio ¶¶ 6, 8-10; Compl. ¶ 11.) LexServ then made a claim for the Policy's death benefit and "collect[ed] or assist[ed] in collecting" the death benefit on behalf of its principal. (Comp. ¶¶ 11, 32, 41.)

In this action, the Estate seeks to recover that very death benefit pursuant to applicable Delaware statute, which makes STOLI policies illegal and, to deter the creation of such policies, empowers the estates of deceased insureds to recover any death benefits paid out to STOLI investors. 18 *Del. C.* 2704(b); *Estate of Malkin v. Wells Fargo Bank, N.A.*, 379 F. Supp. 3d 1263, 1284 (S.D. Fla. 2019) ("*Estate of Malkin I*") (awarding $4 million death benefit to estate on policy procured through STOLI scheme under 18 *Del. C.* 2704(b)); *Lavastone Capital LLC v. Estate of Berland*, —A.3d—, No. 75-2021, 2021 WL 5316071, at *5-8 (Del. Nov. 16, 2021) ("*Berland*") (answering certified questions and confirming, *inter alia*, that "an estate my profit under 18 Del. C. § 2704(b) [even] where the policy is procured in part by fraud on the part of the decedent and the decedent profited from the previously sale of the policy . . . ."). Most other states, including Florida, *see* Fla Stat. Ann. § 627.404(1) & (4), also make STOLI schemes illegal and allow the estates of STOLI insureds to recover from third party investors any amounts paid out under the policies. *See, e.g.*, *Sun Life Assur. Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 852 (N.J. 2019) (citing the anti-STOLI statutes of thirty states, including Florida); *id*. at 165 (discussing STOLI prohibitions under common law).[1] As these states and others recognize, STOLI policies

---

[1] Delaware and Florida are just two of 28 states with statutes that expressly provide for and encourage an insured's loved ones to seek recovery of money paid on illegal STOLI policies to discourage human life wagering. *See* Alaska Stat. Ann. §21.42.020(b); Ariz. Rev. Stat. Ann. §20-1104(B); Ark. Code Ann. § 23-79-103(b); Colo. Rev. Stat. § 10-7-709; 18 *Del. C.* 2704(b); Fla. Stat. Ann. § 627.404(4); Haw. Rev. Stat. § 431:10-204(c); Idaho Code Ann. § 41-1804(2); Kan. Stat. Ann. § 40-450(c); Ky. Rev. Stat. Ann. § 304.14-040(3); La. Stat. Ann. § 22:901(B); Me. Rev. Stat. tit. 24-A, § 2404(2); Md. Code Ann. Ins. § 12-201(d); Minn. Stat. Ann. §60A.0789(1)(a); Miss. Code Ann. § 83-5-251(2); Mont. Code Ann. § 33-15-201(2); Nev. Rev. Stat. § 687B.040(3); N.J. Stat. Ann. § 17B:24-1.1(c); N.M. Stat. Ann. § 59A-18-4(B); N.Y. Ins. Law § 3205(b)(4); N.D. Cent. Code § 26.1-29-09.1(2); Okla. Stat. Ann. tit. 36, § 3604; Or. Rev. Stat. § 743.040(2); R.I. Gen. Laws § 27-4-27(b); S.D. Codified Laws § 58-10-5; Wash. Rev. Code § 48.18.030(2); W. Va. Code § 33-6-2(b); Wyo. Stat. Ann. § 26-15-102(b).

violate public policy and cause harm by taking advantage of insurers and the senior-citizen insureds. (Compl. ¶ 18.)[2]

In the face of the Estate's compelling allegations and the applicable law, LexServ's motion to dismiss ("MTD") raises a number of infirm arguments; mischaracterizes the complaint's allegations—including by erroneously suggesting that the complaint somehow admitted that "LexServ did not receive the death benefit"; and relies on a strawman argument that it was merely the agent of a—still intentionally undisclosed—principal. LexServ's arguments fail, and its mischaracterizations are plain.

LexServ first argues that it lacks any suit-related contacts with Florida and that it is thus beyond this Court's jurisdiction. But, as summarized above, it is alleged that LexServ had many such contacts, and it is alleged that it was these very contacts that gave rise to the Estate's claims. To be sure, without LexServ's contacts, the death benefit would never have been paid, and the

---

[2] Some of the harms that STOLI policies inflict on the senior-citizen insureds are moral and psychological: the insureds know that, for so long as their policies are in effect, they are worth more dead than alive to certain investors who have an interest in their early demise, and they know that those investors are using their lives as instrumentalities with which to commit fraud. Other harms are more concrete. For example, as happened here, STOLI insureds are monitored and surveilled by investors or their agents. As part of STOLI schemes, "the senior must agree to periodic phone calls or visits to monitor his or her own continued existence. Sadly enough, if life expectancy is less than a year, these grim reaper calls can occur as frequently as monthly." Statement of James Avery, Jr., U.S. Sen. Special Committee on Aging, *Betting on Death in the Life Settlement Market: What's at Stake for Seniors*, No. 111-4 (Apr. 29, 2009). In addition, the insureds' private medical information is routinely passed from investor to investor as the policies are resold and revalued. *See* Susan Lorde Martin, *Betting on the Lives of Strangers: Life Settlements, STOLI, and Securitization*, 13 U. Pa. J. Bus. L. 173, 198–99 (2010). Victims may also face unwanted tax liability from having their (fake) premium-finance loans "forgiven," and may find themselves barred from taking out needed life insurance in the future because STOLI investors have already exhausted their insurability. *See* Martin, *supra*, at 198; Staff Report to the SEC Commission, Jul. 22, 2010, at 13.

Estate's right to recover the death benefit proceeds under Delaware statute would have never triggered.[3]

LexServ next argues that the complaint fails to state a claim as against LexServ because, it says, Florida and not Delaware law applies. But LexServ is mistaken. As an initial matter, and as this Court noted in a similar suit filed by an estate seeking to recover, under Delaware's recovery statute, proceeds paid on a policy insuring the life of a Florida resident, "it is not necessary to conduct a choice-of-law inquiry in order to determine that Delaware law governs the Estate's claims" because the "statute itself is the vehicle by which the Estate has brought its claim . . . ." *Estate of Malkin I*, 379 F. Supp. 3d at 1273. That said, even if Florida's *lex loci contractus* test were applied—as LexServ argues it must be—this doctrine provides that the applicable law is the law of the place where the last act necessary to complete the contract occurred, and this Court has held that, at least in the context of life insurance policies, that is the place where the policy was ultimately delivered. *Id.* at 1273 (noting that the question of "whether in fact the Policy here falls within the Delaware statute's ambit . . bears some similarly to Florida's fact-intensive *lex loci contractus* test" and finding that "[t]here is no question that the [Delaware] statute applies here. The Policy in this case was issued for delivery in Delaware, and it was delivered in Delaware."); *Sun Life Assurance Co. of Canada v. U.S. Bank Nat'l Ass'n*, No. 14-CIV-62610-BLOOM/VALLE, 2016 WL 161598, at *11 (S.D. Fla. Jan. 14, 2016), *aff'd in relevant part*, 693 F. App'x 838 (11th Cir. 2017). Here, as alleged in the complaint—and as with all Delaware policies issued to Delaware

---

[3] To the extent this Court is not satisfied with LexServ's contacts with Florida, dismissal is nevertheless premature, and jurisdictional discovery should be permitted for the reasons explained below.

4

statutory trusts as the owners—the place of delivery was Delaware, which means that even under Florida's choice of law test, Delaware law applies.[4] (Compl. ¶¶ 29, 34.)

Finally, LexServ argues that, even if Delaware law does apply, it is not a proper defendant under the Delaware statute because it merely acted as the agent for an undisclosed principal. But the complaint alleges more than this. The complaint alleges that "***the death benefit was paid by the issuing insurance company to [LexServ]*** and/or its principals . . . ." (Compl. ¶ 32 (emphasis added).) Neither the Estate nor this Court is obliged to accept LexServ's words to the contrary in the form of a sham affidavit, especially where LexServ's own marketing materials boast that it has "collected" over $4 billion in life insurance death benefits. (*See* Ex. A to MTD.) Regardless, even if LexServ simply served as agent to an undisclosed principal, it is black-letter law that an agent is not relieved from liability merely because it acted for or at the direction of that principal. RESTAT. 3D AGENCY § 7.01. This is especially true where the principal remains undisclosed because the agent (as here) refuses to reveal the principal's identity. In fact, this Court rejected this same argument when it was made by LexServ's sister company, ITM TwentyFirst, LLC ("ITM"), in *Estate of Diamond v. ITM, et al*., 21-cv-80339, Dkt. No. 57 (S.D. Fla. June 17, 2021) ("*Diamond*").[5]

---

[4] To the extent this Court should have concerns about choice of law, dismissal is nevertheless premature, and relevant discovery should be permitted for the reasons discussed below.

[5] *See* LexServ's Corporate Disclosure Statement (D.E. 28) (identifying ITM as "related to LexServ," as an "affiliate" of LexServ, and—like LexServ—wholly owned by Longevity Holdings, Inc.).

<u>**ARGUMENT**</u>

**I.      This Court Has Personal Jurisdiction Over LexServ**

"A federal court sitting in diversity may properly exercise jurisdiction over a defendant only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). Both requirements are met here as LexServ's contacts with and activities within this forum are extensive.

**A.      There is specific jurisdiction under Florida's long-arm statute**

Florida's long-arm statute "bestows broad jurisdiction on Florida courts." *Execu-Tech Business Systems, Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582, 584 (Fla. 2000). Subsection (1)(a) of the long-arm statute provides in relevant part: "A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state . . . ."

The test for whether a claim "arises from" these kinds of activity is lenient: there need only be a "direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the action that falls under the long-arm statute." *Glovegold Shipping, Ltd. v. Sveriges Angfartygs Assurans Forening*, 791 So. 2d 4, 10 (Fla. Dist. Ct. App. 2000) (cleaned up).

**1.      Specific jurisdiction exists under the long-arm statute because LexServ engaged in business in Florida.**

Specific jurisdiction is proper under Section (1)(a)(1) of Florida's long-arm statute because (i) LexServ engaged in business in Florida, and (ii) the Estate's claim arises from that activity.

"In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.2000). Here, the parties agree that LexServ engages in the business of providing policy owners with various services relating to the life insurance policies in which they invest. Mr. Krinsky lived in Florida since before the Policy was issued in 2006 and until his death in 2021—thus, in its role as "servicer" on the Policy, LexServ necessarily **reached into Florida** to make and maintain regular contact with Mr. Krinsky and his daughter to monitor Mr. Krinsky's health and assess how much longer he might live; to obtain medical record authorizations in Florida to monitor Mr. Krinsky's health; to identify when Mr. Krinsky passed away in Florida; to issue a "request for a death certificate" to the Florida Department of Health; to make a claim for the Policy's death benefit from the Policy; and then to "collect or assist in collecting" the death benefit.[6] (MTD at 3; Decl. of M. Coniglio ¶¶ 6, 8-10; Comp. ¶¶ 11, 32, 41.) Accordingly, LexServ "engag[ed] in" business in the Florida and is subject to Florida's long-arm statute. F.S.A. § 48.193(1).[7]

Looking for a way out, LexServ argues that this Court does not have jurisdiction over it because LexServ has no offices or employees in Florida, and because its activities occurred by

---

[6] LexServ claims to have "collected" over $4 billion in death benefits. (Ex. A to MTD.) Given Florida's large elderly population and LexServ's nation-wide reach, it is likely that a significant portion of LexServ's $4 billion book of business was similarly collected through LexServ's business dealings in—and business contacts with—Florida.

[7] Notably, at least one of LexServ's "sister" companies, Maple Life Financial, LLC (which advertises LexServ's services on its own website, and may perhaps be more than a mere sister in the corporate family tree), is licensed to conduct business in Florida and has a registered agent in Florida. *Ranger Nationwide, Inc. v. Cook*, 519 So.2d 1087, 1088 (Fla. 3d DCA 1988) ("It is well settled that a foreign corporation which voluntarily registers and qualifies to do business in Florida is subject to the process of our courts . . . .").

way of email and telephone calls rather than in person. (MTD at 5-6.) The law, however, is clear that the question of whether a party has an office or employees in Florida is not "dispositive" as to personal jurisdiction, *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005), and emails and telephone calls can certainly serve as a basis for personal jurisdiction in Florida. *Canale v. Rubin*, 20 So. 3d 463, 469 (Fla. Dist. Ct. App. 2009) ("Certainly, telephone calls made to Florida may be relevant to whether an out-of-state resident is doing business in this state. . . . [T]he nature of the calls must be examined.").[8]

LexServ also attempts to characterize its pervasive activities in Florida as mere "sporadic contacts." *Id.* But even "engaging in a single act for profit" can be enough to satisfy jurisdiction, *See Schwab v. Hites*, 896 F.Supp.2d 1124, 1135 (M.D. Fla. 2012), and LexServ's contacts with Florida go well beyond "sporadic contacts"—indeed, the allegations are that LexServ closely monitored Mr. Krinsky's health by regularly contacting Mr. Krinsky's family; requested and

---

[8] The cases to which LexServ cites are readily distinguishable from the current set of facts. For example, *Stonepeak Partners, LP v. Tall Tower Capital*, LLC, 231 So. 3d 548 (Fla. 2d DCA 2017), turned significantly on the fact that the out-of-state defendant's communications into Florida concerned "a transaction that was never consummated," and "[t]here was no evidence that [defendant] derived pecuniary gain as a result of the communications . . . ." *Id.* at 556. Similarly, in *Accurate Insurance Group, Corp. v. Accurate Insurance Services, Inc.*, 14-cv-22381, 2015 WL 11233072 (S.D. Fla. Mar. 2, 2015), the transaction at issue was never consummated, and thus the "vague allegation that the parties entered into negotiations that ultimately broke down" was insufficient on its own to evidence that defendant was engaging in business in Florida. Here, of course, LexServ had a definite pecuniary purpose for communicating with the Krinsky family (in addition to engaging in LexServ's other Florida activities), and it did so pursuant to an existing servicing agreement with the Policy's owner. Finally, in *Trepko, Inc. v. Golden W. Trading, Inc.*, 20-cv-464-CEH-JSS, 2021 WL 424347 (M.D. Fla. Feb. 8, 2021), the complaint itself did not allege any business activity in Florida, and with respect to communications alleged in a subsequently filed affidavit, the court relied solely on *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. App'x 779 (11th Cir. 2014), which itself had found no business activity where there was an "isolated purchase of one item from a Florida company . . . accompanied by telephone and email communication[s]" that lasted just one month, whereby defendant "did not, by buying [the item], seek to earn any money." Here, LexServ communicated regularly with the Krinsky family over the course of years with an obvious pecuniary goal.

obtained medical records from Florida; requested and obtained a copy of Mr. Krinsky's death certificate from Florida; then used that certificate to make a claim for the death benefit and collect the proceeds. (MTD at 3; Decl. of M. Coniglio ¶¶ 6, 8-10; Comp. ¶¶ 11, 32, 41.) Thus, without question, LexServ purposefully directed its activities toward Florida.

Finally, the Estate's claim arises from LexServ's business activities because there is a "direct affiliation, nexus, or substantial connection," *Glovegold Shipping,* 791 So. 2d at 10, between these activities and the Estate's claim. Indeed, and as discussed again below, everything that LexServ did with respect to the Policy was done in order to protect the Policy's value and to collect the death-benefit proceeds. Through its claim, the Estate seeks to recover precisely those proceeds.

## B.     There is specific jurisdiction under the Due Process Clause

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (cleaned up).

Minimum contacts sufficient to create specific jurisdiction exist where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Id*. at 284. This substantial connection is created where the relationship "arise[s] out of contacts that the defendant *himself* creates with the forum State," *id*. at 284 (internal quotation marks omitted; emphasis in original), as where the defendant has "purposefully reached out beyond their State and into another . . . .," *id*. at 285 (cleaned up). "These requirements ensure that the defendant has fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Aviation One of*

*Fla., Inc. v. Airborne Ins. Consultants*, 722 F. App'x 870, 879 (11th Cir. 2018) (internal quotation marks omitted).

From these principles, the Eleventh Circuit has articulated a three-prong test. That test examines "(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks). Each prong is met here.

1.   **LexServ has satisfied the purposeful-availment / minimum-contacts prong.**

LexServ has minimum contacts with Florida, as it actively and knowingly monitored and surveilled Mr. Krinsky in Florida, and after Mr. Krinsky died, LexServ reached back into Florida to request a copy of the death certificate from the Florida Department of Health and then made a claim for, and collected, the death benefit. (MTD at 3; Decl. of M. Coniglio ¶¶ 6, 8-10; Comp. ¶¶ 11, 32, 41.) As such, LexServ purposefully directed activity into Florida. This satisfies the Due Process Clause's purposeful-availment / minimum-contacts requirement.

2.   **The Estate's claim arises out of or relates to LexServ's contacts with the forum.**

The Eleventh Circuit applies the flexible "but-for" standard to determine whether a claim "arises out of or relates to" an in-forum contact. *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1315 (11th Cir. 2018) ("We are thus bound to apply the but-for causation requirement . . . ."). This standard is easily met here.

It was through LexServ's regular contacts with the Krinsky family in Florida that LexServ monitored Mr. Krinsky's health, learned when he was failing, and ascertained that he had died.

10

(Decl. of M. Coniglio ¶¶ 6, 8-10; Comp. ¶¶ 11, 32, 41.) Then, after Mr. Krinsky died, LexServ reached back into Florida to obtain Mr. Krinsky's Florida death certificate from the Florida Department of Health so that that the Florida death certificate could be submitted to the carrier to obtain the Policy's death benefit. (MTD at 3; Decl. of M. Coniglio ¶¶ 6, 8-10; Comp. ¶¶ 11, 32, 41.) The Estate's claims arise directly out of the payment of those death benefits; indeed, the entire purpose of the Estate's claims here is to recover the death benefit payments which would not have been possible but for LexServ's contacts with Florida.

To be clear, if LexServ had never reached into Florida to monitor Mr. Krinsky's health, learned that he had died, and obtained his death certificate, the carrier could not have paid the claims. Far from being some incidental, random, or fortuitous occurrence that happened to involve Florida, the very core of the Estate's claim arises, in significant part, out of LexServ's deliberate activities in Florida.

In an attempt to avoid these inconvenient facts, LexServ suggests that the Estate's claim "arises entirely out of the 2006 transaction" when the Policy was issued. (MTD at 6.) Not so. Although facts surrounding the application for and issuance of the Policy are certainly relevant to the Estate's claims, *the Estate's claims, by the plain terms of the applicable statute, accrued only in 2021 when the Policy's death benefit was paid.* To be clear, the Estate's claim is to recover the Policy's death benefit, and under the applicable statute, that claim is only triggered if and when the issuing insurance carrier pays a STOLI policy's death benefit upon the death of the insured.[9] *See* 18 *Del. C.* 2704(b) ("If the beneficiary, assignee, or other payee under any contract made in violation of this section *receives from the insurer* any benefits thereunder accruing upon the death

---

[9] If, for example, the carrier elects not to pay the death benefit and instead succeeds in having the policy declared void *ab initio* by a court, no death benefit is paid, and there is therefore no claim for the estate under the statute.

. . . of the individual insured, the [insured's] executor or administrator . . . may maintain an action to recover such benefits from the person so receiving them.") (emphasis added); *Estate of Malkin I*, 379 F. Supp. 3d 1263, 1270-72 (explaining that under § 2704(b), an estate's claim to recover the death benefit proceeds of an illegal STOLI policy accrues when those proceeds are paid). All of LexServ's relevant activity took place in or was specifically directed at Florida, and the injury took place in Florida as a direct result of LexServ's activities in this forum, including its activities directed to the Florida state government itself.

### 3. Exercising jurisdiction would not offend traditional notions of fair play and substantial justice.

"The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks omitted). *See also Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988) ("[A]n inference of reasonableness arises where the first two criteria are met and . . . only the unusual case will not meet this third criterion.").

Factors that courts "must consider in determining whether exercising personal jurisdiction over [a defendant] would offend notions of fair play and substantial justice include the following: the burden on [the defendant] of defending the suit in Florida; Florida's interest in adjudicating the suit; [the plaintiff's] interest in obtaining effective relief; the interests of the interstate judicial system in using resources efficiently; and the interests of the states in furthering shared substantive policies." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1221 (11th Cir. 1999) (brackets in original). None of these factors would make the exercise of jurisdiction unreasonable.

*First*, it is eminently reasonable to subject LexServ to suit in Florida in this dispute over the Policy's death benefit when LexServ intentionally reached into Florida to establish and

maintain regular contact with Mr. Krinsky and his family so that it could assess his health, obtain and analyze his medical records, learn when his health began to fail, ascertain the date of his death, then reach out to the State of Florida itself to obtain Mr. Krinsky's Florida death certificate—all so that that Florida Death Certificate could be submitted to the issuing carrier to receive the very death benefit that is at issue in this litigation and whose payment literally triggered the Estate's causes of action. *Second*, Florida has a strong interest in this case: to protect its residents from STOLI schemes and to deter STOLI promoters from taking advantage of Florida residents like Mr. Krinsky. This interest is embodied in Fla. Stat. Ann. § 627.404, which mirrors the Delaware legal principles under which the Estate is proceeding. *Third*, litigating in Florida will not substantially burden LexServ. There is no reason to believe that litigating in Florida will burden it any more than litigating in a different state in this country. More generally, "modern methods of transportation and communication have significantly alleviated any burden" entailed by litigating in a foreign form. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006). *Fourth*, the Estate has an interest in obtaining convenient and effective relief in Florida because relevant witnesses and other evidence are located in the state and because the personal representative of the Estate, Mr. Krinsky's daughter, resides in Florida. *Finally*, almost all states have outlawed STOLI schemes. Thus, these states have a shared interest in allowing the estates of STOLI victims to easily and efficiently pursue remedies against the promoters of such schemes. Allowing this case to proceed will promote that shared interest.

C.    **In the alternative, this Court should permit the Estate to supplement its opposition with facts obtained through jurisdictional discovery**

The Estate believes that the current record strongly supports the exercise of personal jurisdiction over LexServ. But in the event this Court should disagree, the Estate should be provided with the right to pursue jurisdictional discovery so that it can provide the Court with

supplemental evidence. *See Aviation One of Fla., Inc.*, 722 F. App'x at 878 (recognizing the propriety of taking jurisdictional discovery while a Rule 12(b)(2) motion is pending). Contrary to what LexServ argues, the Estate has set forth in the Complaint a *prima facie* case for personal jurisdiction—had it not done so, LexServ would have had no need to submit a detailed declaration purporting to rebut that *prima facie* case.

Through its possible jurisdictional discovery, the Estate would seek to explore, among other things, the precise details and frequency of the activities that LexServ conducted in Florida. Thus, the Estate respectfully requests that, if this Court has any concerns about the sufficiency of the evidence supporting personal jurisdiction over LexServ, the Court give the Estate an opportunity to address those concerns by filing a supplemental brief with evidence obtained through jurisdictional discovery.

## II.   The Estate Has Stated a Claim Against LexServ under Delaware Law by Alleging that LexServ or Its Principal Received the Unlawful Death-Benefit Proceeds

### A.    Delaware law applies

LexServ argues that Florida—not Delaware—law applies and that therefore the Estate has failed to state a claim. But LexServ is mistaken, as the record is clear that Delaware law applies because the Estate has alleged that the Policy was "applied for, issued, and delivered in Delaware to the Delaware trustee of" the Seymour Krinsky Insurance Trust, a Delaware statutory trust. (Compl. ¶ 29.)

This Court previously addressed this issue in the context of a similar recovery case also involving a policy that had been applied for by and issued to a Delaware trust and concluded that, notwithstanding the fact that the insured was a Florida resident, the case was to be governed by Delaware law. In *Estate of Malkin I*, faced with defendant's argument that Florida law should apply, the Court first noted that no "choice-of-law inquiry is necessary [because,] [s]imply put,

this is not a contract case to be governed by the law of one state or another, depending on where the contract was executed. For one thing, the Estate does not claim here that it has any contractual rights under the Policy." 379 F. Supp. 3d at 1272-73. The Court went on to comment that the clear mandate of 18 *Del. C.* § 2701(2) was that Delaware law applied "to all insurance contracts" delivered in Delaware and that, under 18 *Del. C.* § 2704(g), "trust-owned life insurance polic[ies] . . . delivered to the place of business in Delaware of the trustee of said trust, shall be deemed to have been delivered in Delaware." *Id.* The Court therefore correctly concluded that "[t]here is no question that the [Delaware] statute applies here. The Policy in this case was issued for delivery in Delaware, and it was delivered in Delaware." *Id.* at 1273. When defendant later appealed on different grounds, the Eleventh Circuit in *Estate of Phyllis Malkin v. Wells Fargo Bank, N.A.*, 998 F.3d 1186 (11th Cir. 2021), issued a precedential opinion, applying Delaware law to invalidate the policy on the life of the Florida resident. *Id.* at 1190-91.

Similarly, in *Sun Life Assur. Co. of Canada v. U.S. Nat'l Bank Assoc.*, No. 14-cv-62610-BLOOM/VALLE, 2016 WL 161598 (S.D. Fla. Jan. 14, 2016), this Court concluded that Delaware law applied to a STOLI claim, rejecting the investor's argument to apply Florida law simply because the insured resided in Florida. *Id.* at *9-14. This Court, this time applying *lex loci contractus*, found that the Delaware trust's acceptance of delivery of the policy as owner (the final step to place the policy in force) required the application of Delaware law. *Id.* at *11. The decision was affirmed as "thorough and well-reasoned" by the Eleventh Circuit. 693 Fed. App'x 838, at 840 (11th Cir. 2017) ("Here, the last act necessary to complete the contract was the owner's acceptance of the . . . Policy, which indisputably occurred in Wilmington, Delaware.").[10]

---

[10] *See also Sun Life Assur. Co. of Canada v. U.S. Nat'l Bank Assoc.*, 369 F. Supp. 3d 601, 605 (applying Delaware law to policy issued for delivery to a Delaware trust in Delaware despite the insured being a Florida resident); *U.S. Bank Nat'l Ass'n v. Sun Life Assur. Co. of Canada*, No.

In the event this Court still has concerns about choice of law, the Estate requests the opportunity to pursue relevant discovery so that, if necessary, it can provide the Court with supplemental evidence.

### B.    The Estate has stated a claim against LexServ

"[O]n a Rule 12(b)(6) motion," courts "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. In determining whether a complaint survives a Rule 12(b)(6) challenge," courts "ask whether the complaint contains enough facts to state a claim to relief that is plausible on its face. A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (cleaned up).

Under Delaware law, the estate of an insured under a STOLI policy may recover any proceeds paid out to a third party. 18 *Del. C.* 2704(b). Here, the Estate alleges that a life-insurance policy on Mr. Krinsky's life was a STOLI policy, and that the insurer paid the death benefit to LexServ.[11] (Comp. ¶ 32.) If accepted as true, these allegations "allow[] the court to draw the reasonable inference that" the Defendants are "liable for the misconduct alleged." *Bilal*, 981 F.3d at 911. Therefore, the claim is plausible on its face.

LexServ argues that it is not a proper party because "LexServ did not receive the death benefit." (MTD at 15.) LexServ also argues that the Estate's alternative theory of vicarious liability

---

CV144703SJFARL, 2016 WL 8116141, at *13 (E.D.N.Y. Aug. 30, 2016), report and recommendation adopted, No. 14CV4703SJFARL, 2017 WL 347449 (E.D.N.Y. Jan. 24, 2017) (same despite the insured being a New York resident).

[11] As noted above, LexServ claims—inexplicably—that Paragraph 32 of the complaint "admit[s] that LexServ did not receive the death benefit." (MTD at 15.) Yet Paragraph 32 says the exact opposite: "*[T]he death benefit was paid by the issuing insurance company to MLF* and/or its principals . . . ." (Compl. ¶ 32.)

fails because LexServ (as agent) cannot be held liable for the actions of its principal. (MTD at 16-18.) Because LexServ's arguments fail due to the lack of evidence at this stage that any entity other than LexServ sought and received the Policy's death benefits (as the Estate has alleged in the Complaint), and because LexServ has failed to identify any such entity if one exists, the Estate addresses these arguments together.

In a similar case brought by an estate against a STOLI investor, LexServ's sister company, ITM, previously raised these same arguments, through the same attorneys that represent it now, and those arguments failed. *See Diamond*, Dkt. No. 57 at 6-7 (denying ITM's motion to dismiss with prejudice and granting an estate's motion despite ITM's arguments it was not a proper party because it did not receive the money and/or that it could not be named alongside its principal who received the death benefits because (i) "Plaintiff knew that ITM was the servicer of the life insurance policy at issue, who may have been the recipient of the death benefit or working on behalf of the recipient"; (ii) "ITM, who knew who the actual recipient of the policy proceeds was, refused to disclose that information to Plaintiff until Plaintiff sought early discovery . . . and I order[ed] ITM to provide that information"; and (iii) Plaintiff's decision to name ITM alongside the recipient of the benefits was proper because "Plaintiff asserts that it desires to preserve its ability to seek recovery from ITM should discovery reveal that ITM is liable in an agency capacity in connection with servicing the alleged STOLI policy"). These arguments should fail now for the same reasons.

Further, while LexServ has filed an affidavit in an effort to avoid liability in this action, the factual assertions contained therein are at odds with the allegations in the complaint and the documents in the public record that show that LexServ's practice is to "collect" death benefits, bragging of its success in doing so on its website. (*See* Ex. A to MTD ("4B in Death Benefit

Collected")); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) ("[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff."). The same is true of LexServ's attempts to distance itself from the practice of submitting death claims to insurance carriers. The public record shows that LexServ's sister company, ITM, does this routinely, and it is highly likely that the same is true of LexServ. *See S.E.C. v. Pacific West Capital Grp., Inc., et al.*, 2:15-cv-02563, Dkt. No. 153, at 11 (C.D. Cal. May 2, 2018). Neither the Estate nor this Court is obliged to simply take LexServ at its word that it did not play such roles here. Thus, for purposes of this motion, these facts are established.

To be clear, LexServ is hiding the identity of who ultimately ended up with the proceeds. But because that is a detail that is "peculiarly within the knowledge" of LexServ, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009), plaintiffs are not required to allege such facts, *see id*. *See also Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) ("Pleading on information in belief is still permissible where, as here, the facts are peculiarly within the possession and control of the defendant."). Rule 12(b)(6) requires that the plaintiff "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014), and that is exactly what the Estate has done.

And even assuming *arguendo* that LexServ merely acted as agent in connection with administering the Policy and collecting the illegal STOLI proceeds but did not receive any of the insurance proceeds itself, LexServ is a proper party in this action in its own right. It is black-letter law that an agent is not relieved from liability merely because it acted for or at the direction of a principal. *See, e.g.*, *Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 723 F.Supp.2d 676,

689 (D. Del. 2010) ("Under Delaware law, a principal has liability for torts of the agent committed within the scope of the agency relationship. However, even if DSPC is liable as a principal for the torts committed by OCC, both are tortfeasors—OCC is not absolved of liability simply because it is an agent. Delaware follows the Restatement of Agency, which states that '[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal[.]'") (citing *Khanna v. McMinn*, 20545-cv-NC, 2006 WL 4764028, at *28 (Del. Ch. May 9, 2006); *T.V. Spano Bldg. Corp. v. Wilson*, 584 A.2d 523, 531 (Del. Super. 1990) (quoting RESTAT. 2D AGENCY § 343 (1958)).[12]

Indeed, as explained in the Restatement, suit may be brought against an agent when—as it appears here—the principal is undisclosed. *See* RESTAT. 3D AGENCY § 6.09. In such cases, suit against the agent is proper, and the agent is only discharged from liability if the principal satisfies the judgment; otherwise the agent itself is and remains liable. *Id.* cmt. c. ("[This] rule is consistent with the contemporary view that a judgment against one person who is liable for a loss does not terminate the claim that the injured party may have against another party who may be liable for the loss."); *see also* RESTAT. 2D AGENCY § 343 ("An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal[.]"); *id.* § 344 ("An agent is subject to liability, as he would be for his own personal

---

[12] The Estate anticipates that LexServ will argue that there has been no allegation of tortious conduct and that these agency principles are therefore inapposite. This argument should fail: "Common-law tort law is not the sole basis upon which a person may be subject to nonconsensual liability. For example, a statute may declare conduct unlawful . . . and expressly or impliedly impose civil liability in damages to the victim of the violation. . . . When an agent's conduct violates a constitution, statute, regulation, or ordinance, the agent is subject to liability although the agent acted at the principal's direction or to further the principal's interests . . . ." RESTAT. 3D AGENCY § 7.01 cmt. c.

19

conduct, for the consequences of another's conduct which results from his directions if, with knowledge of the circumstances, he intends the conduct, or its consequences[.]").

As a result, LexServ is a proper and potentially liable party in its own right, and its arguments to the contrary lack any support.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the LexServ's motion. In the alternative, should the Court find the current record insufficient to justify exercising personal jurisdiction over LexServ or that the current record is insufficient as to choice of law, the Estate respectfully requests the opportunity to supplement the record with additional evidence developed through jurisdictional and choice-of-law discovery.

Respectfully submitted,

Dated: April 22, 2022

/s/ *Ashley Gomez-Rodon*
Ashley Gomez-Rodon Fla. Bar No. 1010237
COZEN O'CONNOR
Southeast Financial Center
200 South Biscayne Blvd., Ste. 3000
Miami, FL 33131
Phone: 7868713996
Fax: 7862205942

-and-

Michael J. Miller (*pro hac vice* forthcoming)
Gregory J. Star (*pro hac vice* forthcoming)
Joseph M. Kelleher (*pro hac vice* forthcoming)
Alex H. Hayden (*pro hac vice* forthcoming)
One Liberty Plaza
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 372-2349

*Attorneys for Plaintiff, the Estate of Seymour Krinsky*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of April 2022, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.


*/s/ Ashley Gomez-Rodon*
Ashley Gomez-Rodon Fla. Bar. No. 1010237